## Charles R. Thomas and another v. Milton Frost.

*Landlord and tenant : Terminating tenancy : Renewal of tenure : Subsequent acts : Re-entry : Possession : Boom : Fence.* Where a lessee of a water front, which he had used for the storage of logs, ended his lease by proper notice and removed all his logs, no subsequent acts would operate as a renewal or continuance of the tenure, which were not equivalent to a re-entry, or to the exclusion of any other possession. Merely leaving a boom there which could be removed by the owner as well as by himself, would not operate as an assertion of continued possession any more than leaving a fence on land would.

*Tenancy : Act of possession : Renewal of tenure.* Passing rafts across the front to premises below, and closing the boom during their passage to prevent their floating within it, was not an act of possession or tenancy, unless accompanied by an assertion or design to that effect, which the jury in this case negatived.

*Heard April 30. Decided May 12.*

Error to Wayne Circuit.

*Walker & Kent,* for plaintiffs in error.

*Maybury & Conely* and *G. V. N. Lothrop,* for defendant in error.

CAMPBELL, J.

This suit was brought to recover rent for the use and occupation of certain water privileges in Detroit river. Plaintiffs owned a water front which had not been wharfed out. Defendant owned premises below and adjoining, on which he had docked out about five hundred feet. Upon the premises above plaintiffs' the dock extended out about four hundred feet. In September, 1872, plaintiffs rented to defendant their river front for booming purposes, for one month, at fifty dollars a month. Defendant, under said lease, ran a boom across from the head of the dock above, to a corresponding distance from shore on his own dock, and used the enclosed space for storage, and continued the use and paid rent until April 4, 1873. In February, 1873, defendant having complained about the rent, plaintiffs noti-

fied him "that he must pay rent so long as a single stick of timber remained on their premises, but that he might terminate the lease at the end of any month, by taking away his logs and giving notice thereof." He gave the the proper notice. Upon the evidence and under the charge the jury found that he had removed the logs. The questions now presented relate to the effect of certain other acts as bearing on the continuance of the lease, and upon rulings as to the legal effect of such acts.

The evidence for plaintiffs tended to prove the continued maintenance of the boom at the mouth of the enclosure, and also the storage of logs, which latter fact was not found to be true. The only further proofs tended to show that in April defendant floated logs in cribs to his mill, bringing the lower end of the cribs against the end of his own dock, on the upper side, and outside of the line where the boom poles had been fixed, from which cribs the logs were run under his dock (which was built on piles), into his own boom below, the time taken being, according as the weather was favorable, from four hours upward; the longest known detention during bad weather having been two days. The cribs while lying there were fastened to the dock, and kept outside of the line where the boom poles across the plaintiffs' premises had been stationed; and if the poles were there, they were only fastened at the lower end while the cribs were there, and to prevent the logs from floating inside upon the plaintiffs' premises; and no one while the cribs were there applied to pass in or out.

The court below was asked to charge "that the keeping of a boom in front of plaintiffs' premises by the defendant was of itself such a use as would make him liable to pay rent therefor."

In connection with this a charge was asked by the defendant, and given, "that if the jury find that a boom was used by the defendant on the premises, at any time after April 4, and further find that such boom was only used to prevent logs from floating on plaintiffs' front, and to pre-

vent any claim that the tenancy continued, then no tenancy can be inferred from such use of the boom."

The judge refused to give the plaintiffs' charge in terms as requested, but qualified it. The substance of his qualification was that if the defendant kept it in any way by reason of his previous tenancy or occupancy, or did any thing he was authorized to do under that tenancy, he would be bound; but that if he did nothing which concerned booming logs, which was the purpose of the lease, he would not be bound as a tenant, though he might be liable as a trespasser; that it would not be necessary, in order to hold him, that it should be actually used as a boom, if it was put there for that purpose, or if he kept possession for that purpose.

The court further held that bringing rafts in front of the premises, in manner described, to have the logs unloaded and run under the dock into defendant's own boom, without unnecessary delay, would not be such occupation as would continue the tenancy; but that placing rafts and leaving them there without regard to loading and unloading, wonld be acts of tenancy.

There is some reason for urging, as was done by the plaintiffs in error, that the language of the court in some of its parts might countenance the idea that a use of the premises except for the specific purpose of booming logs, would not be such a holding as would continue the tenancy. But taking the whole together, such a construction of the language would be somewhat strained; and, when read, as it must be, in the light of the facts as given in evidence, it cannot be applied so broadly. And the case presents no more than the chief questions argued upon the hearing, as affected by the continuance of the boom, and the use of the water outside in the manner proved, for the purpose of facilitating the unloading of logs from rafts or cribs.

Apart from the latter use, in preventing logs from passing inside the boom upon plaintiffs' premises, there is noth-

ing in the facts to indicate any act whatever done in controlling or using the boom. It appears affirmatively that no one, during the interval in question, attempted to go out or in, and there is no evidence of any interference whatever, or of the presence of defendant or his agents upon the premises for any purpose not connected with the rafting. The only exclusive occupancy which was defined during the lease was of the close within the boom. The notice of removal of logs, which plaintiffs gave to defendant, as the only condition for terminating the holding, referred to logs in that enclosure. It cannot be said that any reasonable construction of the lease could include any premises outside of the booming ground, actually fixed by the parties as a possession.

When the defendant gave notice to terminate his tenancy, and removed his logs, he complied fully with the express conditions which plaintiffs themselves dictated. If he nevertheless continued to possess the premises, he would continue the tenure. But such possession of vacant premises could not exist after such a notice, except through some positive act equivalent either to a re-entry, or to the exclusion of any other possession. We cannot conceive that leaving a boom, which could be removed by the plaintiffs as easily as by the defendant, would be any more significant as an act of possession, apart from some act or declaration concerning its maintenance, than leaving a fence on land which was unfenced when the lease commenced. There is no apparent proof of any such act of exclusive use, and the charge of the court would not have justified the jury in finding for defendant if such a fact existed.

The right of defendant to bring his rafts across plaintiffs' front to pass the logs into his own boom is a question which we cannot properly discuss in this action, except as bearing on the existence of a tenancy. We are unable to see how such acts can be regarded as possessory. They differ in no mportant respect from driving a loaded wagon upon a vacant lot to discharge its load upon an adjoining enclos-

ure.    A series of such acts often repeated would have no·
tendency to prove an entry and ouster.    They may be
technical trespasses, but they can be no more than trespasses..
And fastening the end of a boom during that process, to
keep the logs from straying within it, is no more an act of
possession than putting up a neighbor's bars to·keep a per-
son's own beasts from entering the neighbor's field.    Un-
doubtedly acts may be done with an avowed purpose, or
under circumstances clearly indicating a design to assert
possession, which are in themselves evidence of no such
design.    The charge of the court went very far, and quite
far enough, in declaring under what circumstances the·
defendant might be held as a tenant by bringing and leav-
ing rafts on the premises.    This action can only be main--
tained on the theory of an unbroken tenancy.    When a
person has left and given up his tenure, a subsequent inde--
pendent entry is no continuance, but a new holding of a
very different quality.    The case really turned on whether·
the defendant intentionally retained the boom as a means of
retaining and enjoying possession, or whether he left it
there with no intention of further possession.    We think:
no charge was given or refused to the legal detriment of
the plaintiffs in error.    The judgment must be affirmed,.
with costs.

The other Justices concurred.